Again, case number 241894, and I understand that Ms. French, you're here. Can you hear us? Okay. We can't hear you, so you're on mute, apparently. It's okay. Okay. I think maybe we can... Can you hear us? Yes. Yes, I can. Great. Okay. Well, thank you very much. You have five minutes, and so we've read the materials you submitted, but we're ready to hear from you now. Yes. Thank you. May it please the Court, good morning. My name is Lisa French, and I respectfully request that this Court reverse and remand this case to the lower court. This is a case based on religious discrimination under Title VII, Civil Rights Act 1964. In November of 2019, I, a registered nurse, requested a religious exemption and accommodation from the appellee's seasonal flu vaccination policy, but was denied the opportunity to do so, and my employment was terminated. I request the Court to deny the appellee's request for summary judgment and remand this case to the lower court for three reasons. One, there were errors in the lower court ruling which cited COVID-19 cases. This case involves a seasonal flu vaccine, not COVID-19. This case was pre-COVID. New York State codes, rules, and regulations, NYCRR, Law 10, Section 2000. May I ask a question? So there are these, well, are there these other employees, nurses and the like, at the hospital who have a medical exemption, who are allowed to wear masks? I was told, yes, they are. There are. So your understanding of the hospital's policy is that if you had a medical objection to the vaccine rather than a religious one, they would entertain your request, and if it was approved, allow you to do this job you were doing with a mask and testing? Yes, Your Honor. That's what they say. And you were in the trauma – you were working or you were in the trauma center? Is that right? Yes, Your Honor. I work as a case manager in the emergency department. And part of that, just educate me a little bit, and again, I've read it, but I just want to make sure that I understand. You have a computer, you wheel around with the computer to talk to patients or doctors or who? Primarily everything was digital, so I could pull up the screen from where my office was, was away from the emergency department, and I could do the work. At times they would ask me for information, I would come and discuss with the physicians, primarily, rarely with patients. But sometimes with patients? Sometimes. And to ask this question, so the district court seemed to say that you didn't raise a question about whether the exemption would cause an undue risk to patients, but you did say that the New York State regulations envision people or healthcare workers wearing a mask and testing, right? I'm sorry, could you please repeat that? I mean, you had various objections to the requirement, like to the idea that it would be an undue risk to patients to give this accommodation, right? So like you cited the regulations that seem to envision healthcare workers that are not vaccinated but are doing masking and testing. You said that you thought that the outbreak was not as serious as the hospital suggested it was. So I'm asking, do you think that the vaccination requirement is necessary to protect the health of the patients? I don't know if I'm able to bring something up outside of what we're talking about. But in the appellees, within their supplemental information, they reported that there were, I think, between 2016 and 2019, there were about three patients per year, what amounts to about three patients per year who actually contracted the flu while in the hospital. Right, so because of that amount of risk, it doesn't seem to justify the change in the policy to eliminate the religious exemptions. That's your position, right? They just didn't allow it. I don't know. They didn't allow it. Is there anything else? You've got a little time remaining. Yes, sir. Yes, Your Honor. So the New York Code's Section 10261 was enacted August 26, 2021 for COVID-19 vaccines, not the seasonal flu. The lower court cited several COVID cases in its June 2024 decision. And in November 2019, Section 2.61 of the law was not in place. However, the Constitutional Authority of Public Health and Safety in New York, the New York State Department of Health, through the NYCRR Law 10, Section 2.59, did maintain provisions for health care employee exemptions, even for religious reasons. To decline the seasonal flu vaccine, to allow them to decline the seasonal flu vaccine, and I followed those guidelines during the flu season and did not put anyone at risk, according to the Department of Health. I also let the managers know about my religious belief regarding the flu shot. This is also a material fact and dispute. I told the department manager and the HR manager about that, and they deny it. But there is proof in the emails, in their SA 560 and 562. The appellee's mandatory seasonal flu vaccination policy was not lawful employment policy, as was COVID-19, that policy was. Therefore, that was an error in the lower court's application of the law. The appellee claims that under hardship under Title VII, however, they did not meet the standard under Brock DeJoy, which requires an employer that denies a religious accommodation to show that the burden of granting that accommodation would result in substantial financial costs in the context of business. And that financial cost needs to be more than de minimis. In this case, I requested to work while practicing good hand hygiene and wearing a facial mask, just as I did the previous year, doing the same job without any concerns. The appellee's alleged undue hardship is a material fact and dispute. The appellee did not offer any religious exemptions or accommodations and prevented staff from even asking. It can be found in their SA 310. The appellee has not reported any concrete undue costs associated with its everyday business. Therefore, they did not meet the standard for undue hardship under Brock DeJoy. The lower court incorrectly ruled on retaliation. The appellee has repeatedly argued for summary judgment, citing that the retaliation box was not checked on the charging complaint found in SA 537 and has presented that argument in its request for summary judgment to the lower court and to this court. Appellate appendix, page 138. Thank you. Thank you very much. I think we've got your arguments well in line. We'll turn to the Appellate Ease Council, who's here. And if at any point Ms. Venture can't hear, just wave or get my attention and we'll stop, okay? All right. Ms. Afzali. Yes, good morning, Your Honors. May it please the court. Mara Afzali from Bond, Shenick and King, and I'm here on behalf of Albany Medical Center. In a level one trauma center where hallway beds are filled during the flu season, Albany Med made a safety choice that Title VII fully permits. And, Your Honors, if I may, I'm just going to jump right to Ms. French's arguments, considering the brief amount of time that I have. Well, can I ask this question? So one of the arguments is about whether it's an undue burden, right? Yes. And so your interest is you want to prevent the spread of the flu to patients. Yes, Your Honor. But my understanding from the record is that you would allow a medical exemption for the vaccine requirement but not a religious exemption. So is it true that if somebody had a medical reason for not taking the vaccine, the hospital would accommodate that person by allowing them to wear a mask and do testing? Yes, Your Honor. In this exact job? Yes, Your Honor. So that is the case. That's consistent with many hospitals' policies. So if, in fact, you're providing exactly this accommodation, how could it possibly be an undue burden to provide it for a religious objector if you're providing it for other objectors? So, again, the medical exemptions are subject to a different standard. Why? Because of the way that they're treated under Title VII and, in fact, the case of Algeria. In fact, the interest that you've articulated is preventing the spread of the flu to patients. Somebody who's not vaccinated and is having the same interaction with patients that Ms. French would have, why do they represent a different risk of spread of the flu than she would if she was doing the exact same thing for a different reason? Sure. Well, the case of the Algerian case that we cite to in our brief goes into quite a bit of detail on that. They talk about the distinction between the length of time that a medical exemption might last versus religious exemptions, which are permanent. Was any of this in the summary judgment record here? That's a case that we cited. No, no, no, no, no. You're talking about a case. Sorry, I'm not understanding your question. You're talking about how long the flu will last, the differences between people who might have a medical exemption compared to some other exemption, what those differences might be. Was any of that in this summary judgment record? Your Honor, we do have the declaration that was submitted by Rebecca O'Donnell, who outlined the ICC committee's review of — they undertook a deep review of their existing policy, which also included medical exemptions. They did a deep dive of the change from medical exemptions to religious exemptions in that new policy. And notably, appellant in the record below provided zero facts in opposition and, in fact, admitted in her opposition to our statement of facts all of those facts. But if the ICC, in fact, says transmission — it's better to have a vaccination to prevent transmission to patients, but we're going to provide an accommodation and allow people who are unvaccinated to deal with patients if they have a medical exemption, but we're not going to allow people to be unvaccinated and interact with patients if they have a religious exemption. The question is, are they allowed to do that? Like, I don't see — so that — it's not that that is just dispositive, what they said. That is a policy of the hospital that's under — that's in question, right? Yes, Your Honor. And it's, in fact, one that many hospitals adopt and have been upheld by numerous courts. But I'm asking why. So — right. So if you are required to provide reasonable accommodation and you're excused from that obligation if the accommodation would provide an undue burden, why isn't it just fairly straightforward that if, in fact, you are providing exactly this accommodation to a number of other people, like, it can be an undue burden to provide it to Ms. French? Your Honor, again, it goes to the nature and the distinction between medical exemptions and religious exemptions, which the case law — But I don't understand the nature. So you said a moment ago, I think, in answer to my question, that actually, yeah, if somebody is not taking the vaccine for a medical reason and they're interacting with patients but have a mask and hand washing, it would prevent the same risk of transmission that it would if Ms. French was doing the exact same thing, right? It's not that it would — it actually doesn't prevent — the transmission is still a problem, right? It doesn't stop the transmission, but rather it goes to the burden and how you weigh those factors. In other words, when you're talking about a medical exemption, there's also the risk to that individual, the medical risk. And you're talking about safety and health risks. That's a different analysis when you're talking about a medical exemption. Well, but what you're doing actually is exactly what Title VII says you can't do. You're sort of saying the medical objection, that's really serious because there's a risk to that person. But when somebody comes along and says it's a risk to my soul or to my religious beliefs if I do the vaccine, that's not serious and we don't have to accommodate that. But, like, that is religious discrimination, right? So the case law treats them differently. And under the case law, they, in fact, make those exact distinctions between — and, again, I would point your honor to Algeria. You're saying Title VII allows an employer to say medical exemptions are serious but religious exemptions are not. In the context of vaccine cases in particular, they have allowed hospitals and upheld policies that provide for medical exemptions and don't provide for religious exemptions. Okay. Let's say that I disagree that you can just discount somebody's religious objection. So I want to know why it would be the case that providing an accommodation to the religious person to do the masking and testing would create a risk of transmission of the flu in a way that providing the exact same accommodation to somebody with a medical objection would not. So the risk of transmission exists for anyone who's unvaccinated. That's what's in the record with respect to the ICC's findings. Well, again, it goes back to weighing the undue burden. So you have a risk and you have a risk to patients and the health and safety of the community. And then you have to weigh that against the undue burden against the hospital to be able to, you know, protect the safety of their patients. And so I'm doing that analysis, right? So I'm understanding, yes, if you have a vaccine, it helps to reduce transmission more than simply masking and testing, I suppose. I'm taking that for granted. But then the question is, is allowing the masking without the vaccine an undue burden on the hospital? And I'm looking at the record, and the hospital allows people not to take the vaccine and to do masking and testing instead. If they just don't have a religious objection, they have a different kind of objection. So, in fact, you have that accommodation for some people. How could the record possibly establish that it's an undue burden to provide it to Ms. French? Your Honor, the decision that the hospital made and how they weighed that was based on the existing law, on widespread practices within the health care field and hospitals. It sort of sounds like what you're saying is, yes, we are making a distinction between people who want an exemption for medical reasons and people who want an exemption that's exactly the same but for religious reasons. And so that is discrimination against religion, but we think the case law allows us to do that. That's your position? Your Honor, they are distinct in the way that they – it is, of course, the same risk, and it is a different policy. So to that extent, yes, that is the position, but consistent with the case law, consistent with the facts. And, again, I point to the – But what facts? I mean, I think you just said it's the same risk. Well – That somebody who has this accommodation because of a medical reason presents the same risk that Ms. French would present if she got a religious accommodation. So, again, it's – You allow the one and not the other. So, again, it is a little distinct, which the case law acknowledges. With respect to medical, exemptions don't last forever. Sometimes there are short-lived medical exemptions. Well, first of all, I mean, as Judge Lovier pointed out, like, there was no finding about that. But I have the form that your hospital uses where you can apply for a medical exemption, and one of the reasons might be that you had a severe allergic reaction to a vaccine, right? Yes, Your Honor. And if, in fact, you're allergic to the vaccine, that means indefinitely you're not going to be able to take the vaccine, right? Sure. There are going to be instances – There are medical exemptions that are indefinite. Sure. Of course there are. Yes. Of course there are, but overall – There's often a difference between medical exemptions and religious exemptions. So, again, when you're talking about the health and safety of patients, it's going to be cumulative. And so the hospital has to put out the policies, like the ICC found in their extensive review of the data that's in the record, that they're trying to reduce that risk. They tried for many years. They used masks, and they allowed employees to sign the declination form, and that proved to be ineffective. And so what the ICC did, consistent with many hospitals – That will help reduce the risk of transmission of the flu. But you're also saying it's not an undue burden for us to allow some people who have a medical concern to nevertheless not get vaccinated and still treat patients. We just don't want to allow the people who have a religious reason to do it. So the way you're accomplishing this objective is discrimination against religion. Well, the analysis under Title VII for medical exemptions and religious exemptions are not identical. And I think that's the key here. So we have to talk about whether somebody is similarly situated with respect to the interest that you've identified. You say the interest is in reducing transmission to patients. You just said a moment ago that somebody with a medical exemption who gets to do masking and testing presents exactly the same risk to patients that Ms. French would present if she got the exact same accommodation. So – but then you're saying it's an undue burden to allow her to do it, but not an undue burden to allow that other person to do it. So, again, they're not similarly situated in that the reasons for those are different. The length of them are different. The law treats them differently. Okay, but the question I'm asking in relation to the interest you're accomplishing, it can't be – they're not similarly situated because we like the people who have a medical reason – Of course not. – and don't like the people with a religious reason. Is any part of that answer you just gave in the record? That is – and you mentioned this affidavit, but is that in the record? That is the specific differences between people who are entitled to a medical exemption and those who ask for a religious exemption. Is any of that in the summary judgment? So here I would note that the ICC didn't specifically address the legal aspects of that. Of course they didn't. But they did go through the analysis with respect to how they could reduce the amount of transmission, right? And that reduction of transmission looked at what the current practices were and what was permissible, right, for them to change that policy consistent, again, with – But why wouldn't it be permissible not to have the exemption for medical reasons? Because, again, Title VII treats – If you really were worried about transmission of the flu, why wouldn't you say, all right, if you have a medical reason why you can't take the vaccine, maybe you could do some other job that doesn't involve contact with patients, but I'm sorry, we can't have you interacting with patients. So, again, the decision they made was consistent with what the hospital's understanding of what the legal requirements allowed them at the time. Okay, but maybe the hospital understood the legal requirements. So that's what I'm kind of exploring. I'm sort of asking this question. So you're saying what the hospital was thinking is we can reject religious exemptions but not medical exemptions? Is that what you think? Is that what the hospital thought? No. The hospital passed the policy consistent with what was permitted and consistent with what they were – again, we're not looking at the same exact – there are going to be some cases where a medical exemption might be a more lengthy thing, but overall they're going to be different. They're not exactly the same as a religious exemption, and they're not treated the same way. Can I ask a question, too? Because maybe I'm a little confused. There are three main claims. Yes. One is a failure-to-accommodate claim. Yes, Your Honor. The question and answers, in my view, seem to relate to the failure-to-accommodate. Yes, Your Honor. Second, there's a discrimination claim, and the argument there, I think, was entirely on the basis of Muldrow. Is that correct? So, no. Our argument and – No, no. Her argument. Her argument, correct, which doesn't apply because Muldrow discusses the adverse action.  So with respect to the failure-to-accommodate claim, where I see this issue about the medical exemption. Yes, Your Honor. Is there anything – so you point us to this ICC. What page in that – it's an affidavit, I think. What page can you point us where it says, well, here are the precise numbers. Here is the assessment of risk with respect to medical exemptions. That's different from the numbers or assessment of risk associated with religious exemptions. So that doesn't exist in the record. Hold on one second. Mr. Cameron, Mr. Peralta is leaving. Mr. Peralta, Mr. Peralta, you've got to be on this. Yeah, you've got to be on this. You heard what he said? Yeah. Thank you. I'm sorry. I'm sorry. Go ahead. So, Your Honor, that specific fact does not exist in the record. Okay. So then on this current record, if, in fact, that fact is necessary to grant summary judgment on the claim, doesn't it mean that it was a mistake to grant summary judgment on the existing record? No, Your Honor, because on the record here, which, again, was not disputed by the appellant, there was sufficient facts to satisfy – What do you mean the record wasn't disputed? She did say that she should not lose on summary judgment, right? Sure. When I say disputed, what I'm referring to is their opposition to our statement of material facts, our Rule 56.1 statement. When it came to the facts relating to the ICC committee, the appellant admitted all of those facts. So there was no disputed material facts regarding the ICC's analysis. Right, but that makes sense because given the facts that are now undisputed, she has a plausible claim because you provide this accommodation. It doesn't seem to present an undue burden. And so in the absence of some reason to think that there's some special concern about religious objectors that does not apply to medical objectors, she's shown that she's seeking an accommodation that does not pose an undue burden for the hospital, right? So we disagree that it doesn't. I mean, again, she mentioned that she – Can I ask about this? So Judge Loya said there's also the disparate treatment claim. Yes. So there's this argument that you're saying, well, getting a vaccine is just a qualification for the job. So if somebody does not have a vaccine, they're just not qualified. Correct, which is consistent with – Does that mean we put anything in the qualifications for the job? So let's say that there were – I mean, I understand there's not going to be, but let's say there were a smoking gun email from the CEO of the hospital, and he said, I really hate these religious people. Let's just add as one of the requirements to the job for this job a vaccine requirement, and therefore we'll be able to reject all of the religious applicants that apply for the job. Well, we're going to – But you also said we wouldn't be able to consider whether that's discriminatory because you stuck it into the qualifications as opposed to something that is under a different label. Well, I think there then – of course, that's not the case here, but then a plaintiff would probably have a good case for showing pretext, which doesn't exist there. Well, right. But by putting it as a qualification, you don't get to the step about showing pretext. Sure. So that's what I'm suggesting. So even if you purport to say it's a qualification for the job, she should be able to say, yeah, you said it's a qualification for the job, but it's still pretextual. So it's – again, the case law, including We the Patriots, says it is a qualification of the job. Right. We the Patriots says in a kind of offhand way it's a condition of employment. Right. But that was not a holding – first of all, it's not about Title VII. It's about a due process analysis, and it does not hold that because it purports to be a condition of employment, therefore it's immune from review under Title VII.  And, again, many other cases have also gone on to say it's a qualification of the job, but – I guess I'm asking, like, so why does that make sense? So if the hospital said, you know, one of the qualifications to be on the medical staff here is you have to be on call seven days a week, that means everybody who wants a religious exemption to be off on the Sabbath would just not be qualified for the job, and you just never, ever hire a religious Sabbath observer. Is that right? So here I think we've got a couple issues. Right. So one is that it's a – vaccination, you know, is the qualification of the job. But it's also a legitimate nondiscriminatory reason. But it's not what we talk about in that step. We say it's very easy to meet. It's only about the basic skills to do the job. Right. In this case, Ms. French was literally doing the job last year. Sure. And then you added this requirement. So – and here – But you're saying that the employer can just add whatever requirements they want, and all of a sudden we don't even get to think about whether – I mean, a plaintiff can't even allege that it's pretextual. Well, here, again, there's many other vaccines as well that are qualifications of the job, right, the measles, mumps, rubella, hepatitis B, which are very consistent with other hospital policies. And those, once they're put into a policy in an employee health policy, do become job qualifications. And that is how it works with many vaccines. Here – So what about my hypothetical? So if, in fact, the hospital said to work at this hospital you need to be on call seven days a week, you have to be willing to be clean-shaven because we believe in hygiene, you can't wear head coverings because they get in the way in the hospital or whatever. So somebody who observes the Sabbath needs to have a beard for religious reasons or wears a head covering for religious reasons, all those people would simply not be qualified, and they wouldn't even get to argue that that's not a real qualification but it's a pretext for discrimination. Is that your position? I mean, Your Honor, that isn't the case here, so that's not something I've done a deep dive into the law, but what I do think here – But the arguments are that, right, is that, like, the employer can just stick into the qualifications of the job, all sorts of things that would exclude religious people. I mean, it could even be, like, let's say, you know, in order to advise patients about insurance, like this job here, you have to be able to lift 50 pounds, right? And then a woman applicant would say the only reason you're requiring, you know, a weightlifting requirement is because you want to exclude women. And it does seem pretty tenuous that that's really a requirement for advising people about the insurance, but you're saying as long as they say it's a qualification, we just don't get to think about whether it's pretextual. So I think if it's tenuously related, I think that's just a different analysis. Here, under – there is no tenuous connection between – I mean, according to the SEC report, the affidavit does say vaccinations. And then – so that's the presumption. That's the qualification. Correct. You can get an exemption, but you've got to show that you are entitled. Correct. And so on this record, there's a justification that there was no claim that it was pretextual. No. She's asking for an exemption. Exactly. Like I said, that's not the record we have here. Here we have – Well, she does claim it's pretextual, right? She says that you did this – this was your policy. You allowed religious objections.  And the only reason you adopted the ban on it is to prevent her from seeking an exemption or other people like her. And it's not really related to the qualifications of the job. So my understanding is – That is her argument. I understand you disputed on the merits. Sure. But, like, she does argue that it's pretextual. So I didn't get from her arguments that she was arguing that the qualification itself didn't have a connection to safety. If what you're referring to is her comments that only a few people got the flu per year or it wasn't enough – Well, why don't you respond to my argument? So if, in fact, you operated the hospital for all this time while allowing religious objections – Yes. And then with the appearance of actual religious objectors, you adopted a rule that you're not allowed to have religious objections and you've decided that's a qualification, why wouldn't it be plausible to allege that that's pretextual and not really as what's required for the job because you operated all of these years without that qualification? So, again, here we do have in the record evidence that the ICC looked at to show that there was a change and it wasn't based on they had no reason – you know, they weren't looking at any data and they just decided to make a change. But I guess there's another thing, which is you said that you would allow somebody to do the job if they had a medical exemption, right? So there were medical exemptions available under the policy. Okay. So if somebody applies for this job but they're unvaccinated – Yes. Unless they have a medical exemption, you would not treat that person as unqualified for the job. So it was not a job qualification under the policy if there was a medical exemption. I don't know whether it was – Okay. So, like, today, the current regime says there are medical exemptions but not religious exemptions. Yes. So if somebody applied for this job, but that person was unvaccinated but had a medical reason for not being vaccinated, you would treat that person as eligible and qualified for the job. It would not be a job qualification. Correct.  So the job qualification only applies to people with religious reasons but not to everybody who wants to do this work. It applies to anyone who's unwilling to get the vaccine, right? So there's also some people who don't want it because – For different reasons. For different reasons. And, in fact, that's what – Somebody with a medical reason. Correct. So it's medical exemptions and no other exemptions, not we are against religious exemptions, right? It's just that there isn't any other exemptions available. So there's many reasons, philosophical and otherwise, that people might decline the flu shot. And those would all be treated the same. The qualification issue is there is a class of people that you believe can do this job who are unvaccinated. So that is what the policy permits. Thank you. Thank you very much. Thank you. We'll reserve the decision. Ms. French, thank you very much for your time and your patience. We will reserve the decision, which means that we're back on its side right now. But you'll get a decision from us in due course. Is that okay? All right. Thank you very much.